# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE

Assigned on Briefs March 11, 2014

## STATE OF TENNESSEE V. LESLIE WARREN BLEVINS

**Appeal from the Circuit Court for Fentress County**
**No.  2012-CR-111   Shayne Sexton, Judge**

---

**No.  M2013-01725-CCA-R3-CD - Filed August 5, 2014**

---

The Fentress County Grand Jury indicted Appellant, Leslie Warren Blevins, with three counts of aggravated assault.  After a jury trial, Appellant was convicted of one count of aggravated assault and two counts of assault.  As a result, he was sentenced to an effective sentence of five years in confinement.  Appellant appeals, challenging both the sufficiency of the evidence and his sentence.  After a review of the record and the applicable authorities, we determine that the evidence was sufficient to support the conviction and that the trial court did not abuse its discretion in sentencing Appellant.  Accordingly, the judgments of the trial court are affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Trial Court are Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and NORMA MCGEE OGLE, JJ., joined.

Kevin R. Bryant, Crossville, Tennessee, for the appellant, Leslie Warren Blevins.

Robert E. Cooper, Jr., Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; Lori Phillips-Jones, District Attorney General; and John G. Galloway, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Factual Background

Appellant was indicted by the Fentress County Grand Jury in July of 2012 for three

counts of aggravated assault. The indictment was based on an incident that took place on September 4, 2012.

T.M.[1] and his family lived on a piece of land located behind their family business, a car dealership. A private driveway extended from the rear of the dealership to their home and continued past their home. Appellant lived on a piece of land next to the property owned by T.M.'s family. Appellant had an easement to use the private road owned by the family of T.M.

On the afternoon of September 4, 2012, T.M., D.B., S.G., and B.P., four male juveniles, went squirrel hunting when they got out of school for the day. The boys went hunting on land owned by the T.M.'s father and an adjacent plot of land on which they had permission to hunt. After hunting, the boys went to T.M.'s house to eat pizza.

The boys took their pizza outside to eat. It was around dusk and a bat was flying overhead. B.P. asked T.M. if he could shoot the bat. T.M replied that he did not care. B.P. fired his twelve gauge shotgun overhead at the bat and missed. T.M.'s father came outside and asked the boys to put their weapons away. Shortly thereafter, Appellant approached the property line and told them to put the gun away.

T.M. unloaded the shotgun and put it in D.B.'s truck. Appellant went home where he called 911 and informed the dispatcher that he had "put up with this sh#! as long as I'm going to." He told dispatch that they should send someone before he did "something."

After Appellant came over, T.M.'s guests decided to leave. S.G. and D.B. rode in the truck. B.P. drove a four-wheeler. As soon as they left, T.M.'s grandfather arrived and told him that he heard Appellant had called the police. In fact, the scanner reported that "something was happening" at their residence. They heard tires squealing and saw Appellant driving in the direction of the boys on the driveway.

T.M. and his grandfather went inside the house. S.G. called them from the driveway to report what was happening. T.M.'s father called the police.

According to D.B., he left T.M.'s house and drove down the driveway. Appellant approached D.B. from behind in a vehicle and followed him at a close distance. D.B. pulled over because he thought that Appellant wanted to pass him about at the point where the dealership parking lot was located. B.P. was also there, with the four-wheeler. Appellant pulled into the parking lot and blocked the boys from leaving. He exited his vehicle and

---

[1]It is the policy of this Court to identify minor victims of crime by their initials.

started yelling at B.P. One of the other boys, D.B., got out of his truck. Appellant demanded D.B.'s keys, and D.B. refused. Appellant told D.B. that he would just "whoop" him.

At that time, Appellant pulled a pistol from his pocket and struck D.B. in the head with it twice. He pointed the gun at B.P. and S.G., telling them that he would kill them by "blowing [their] brains out." Appellant struck D.B. again, but this time D.B. managed to grab Appellant and fight back. D.B., fearful for his life, managed to knock the gun to the ground. It remained out of reach of both Appellant and D.B. while the pair continued fighting. D.B. eventually grabbed Appellant and held him so that he could not reach the pistol. During the fighting, S.G. managed to call T.M.'s father at their residence. The father called the police.

Sergeant Billy Hammock of the Fentress County Sheriff's Department arrived on the scene to find D.B. and Appellant in a scuffle. D.B. released Appellant. Appellant grabbed his gun. Sergeant Hammock told Appellant to drop the gun. Appellant was out of breath and angry. D.B. had several injuries to his face and a broken finger.

Sergeant Hammock secured the scene and placed Appellant in the back of the patrol car. Sergeant Hammock found that Appellant's weapon was loaded and capable of being fired. D.B. required medical treatment from his injuries and suffered vision problems and headaches for a short time after the incident.

Appellant testified at trial that he saw the boys in the driveway and that D.B. "flew [him] the bird." Appellant was working on his truck outside his home that night when he heard a couple of gunshots. He did not feel threatened by the shots until he heard his truck "being peppered with shot from a .12 gauge shotgun." Appellant complained that he was hit in the leg by some of the shot and that it rattled his barn and truck. Appellant was unable to produce pictures of the damage or documentation of injuries sustained from the gun shot. After the shots were fired, he heard the boys giggling and laughing. Appellant chambered a round in his pistol but eventually put the pistol back in the truck.

Appellant approached the teenage boys and yelled at them, asking "who shot that gun?" Appellant insisted that the young men laughed and denied shooting the gun. Appellant explained that he had enough of their "crap" and called the sheriff's department. While Appellant was waiting for police to arrive, he saw T.M.'s grandfather arrive and then saw some of the boys jump into a truck and leave. Appellant followed the boys down the driveway to the dealership and detained them for a few minutes. He denied that he threatened the young men.

Appellant asked D.B. for his keys so that he would not be able to leave the scene.

D.B. refused to comply; Appellant explained that he reached around D.B. to take the keys out of the truck. Appellant claimed that D.B. "elbowed" him. Appellant admitted that he grabbed and hit D.B. and that a fight ensued. During the fight, Appellant's gun fell out of his pocket. He admitted that the boys "really ticked him off" and that after he located his weapon, he hit D.B. with it two times. Appellant claimed that he dropped his gun again right before the officer arrived on the scene but was able to grab it when the officer arrived.

Appellant did not see B.P. during the altercation but admitted that he saw B.P. at the dealership after the incident. Appellant denied pointing the gun at anyone and insisted that he did not chase the boys to engage them in a fight. Appellant did admit that he had problems with T.M. at least one time in the past when T.M. drove by the house "blowing the horn" and "raising cane." Appellant possessed a valid concealed carry permit.

Appellant was convicted of one count of aggravated assault of D.B. and two counts of assault of B.P. and S.G. At the sentencing hearing, the trial court heard testimony from the fathers of two of the victims. They described the victims as good kids who were traumatized by Appellant. D.B.'s father recounted D.B.'s injuries, including swelling of the head, a chipped tooth, and a broken finger. He said that D.B. remained fearful of Appellant for several months after the incident; he even stopped hunting for a period of time.

Appellant's neighbor, Mary Barnes, testified at the sentencing hearing. She claimed that he was a "great neighbor." Walter Davis, another neighbor, concurred. Appellant gave a statement, expressing his remorse for his "involvement in this." He assured the trial court that it was not his intention to harm anyone. At the conclusion of the sentencing hearing, the trial court sentenced Appellant to an effective sentence of five years in confinement, including five years for the aggravated assault conviction and eleven months and twenty-nine days for each assault conviction.

Appellant appeals, challenging the sufficiency of the evidence and sentencing.

*Analysis*

*I. Sufficiency of the Evidence*

On appeal, Appellant argues that the evidence is insufficient to support his convictions for aggravated assault and assault. Specifically, Appellant insists that his own testimony contradicts that of the victims and that the confrontation occurred only after he was "fired upon." The State disagrees, arguing that the evidence supports the verdict.

When a defendant challenges the sufficiency of the evidence, this Court is obliged to

-4-

review that claim according to certain well-settled principles. A verdict of guilty, although rendered by a jury, is "approved by the trial judge." *State v. Cazes*, 875 S.W.2d 253, 259 (Tenn. 1994) (citing *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992)). This verdict serves to accredit the testimony of the State's witnesses and resolves all conflicts in the testimony in favor of the State. *Id.* Thus, although the accused is originally cloaked with a presumption of innocence, the jury verdict of guilty removes this presumption "and replaces it with one of guilt." *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). Hence, on appeal, the burden of proof rests with the defendant to demonstrate the insufficiency of the convicting evidence. *Id.* The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. *See* Tenn. R. App. P. 13(e); *Harris*, 839 S.W.2d at 75. In making this decision, we are to accord the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." *See Tuggle*, 639 S.W.2d at 914. As such, this Court is precluded from re-weighing or reconsidering the evidence when evaluating the convicting proof. *State v. Morgan*, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, we may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence." *Matthews*, 805 S.W.2d at 779. Further, questions concerning the credibility of the witnesses and the weight and value to be given to evidence, as well as all factual issues raised by such evidence, are resolved by the trier of fact and not the appellate courts. *State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990). "The standard of review 'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

Appellant was charged with and convicted of aggravated assault, an intentional or knowing assault involving the use or display of deadly weapon. T.C.A. § 39-13-102(a)(1)(A)(iii). Appellant was also convicted of two counts of assault. An assault is committed when a person intentionally or knowingly causes another to fear imminent bodily injury. T.C.A. § 39-13-101(a)(2).

Viewing the evidence in the light most favorable to the State, a rational trier of fact could have found that Appellant committed an aggravated assault against D.B. and assaulted B.P. and S.G. Appellant heard the gunshot fired by the young boys, secured his own weapon, and "took off" down the driveway after the teenagers. He approached D.B. and demanded the keys to his truck. When D.B. did not comply, Appellant told him he would "whoop" him. Appellant struck D.B. twice in the head with a pistol. Appellant then pointed the gun at D.B., B.P. and S.G. and threatened to kill them. Appellant's argument that his own testimony contradicts the testimony of the victims fails. The trier of fact in this case clearly accredited the testimony of the State's witnesses, a task within the jury's purview. This issue

-5-

is without merit.

## *II. Sentencing*

Next, Appellant challenges his sentence. He complains that the trial court enhanced his sentence and ordered him to serve the balance of the sentence in confinement. The State insists that the trial court did not abuse its discretion.

## *A. Sentence Length*

Appellate review of sentencing is for abuse of discretion. We must apply "a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). In making its sentencing determination, the trial court, at the conclusion of the sentencing hearing, first determines the range of sentence and then determines the specific sentence and the appropriate combination of sentencing alternatives by considering: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the enhancement and mitigating factors; (6) any statistical information provided by the administrative office of the courts regarding sentences for similar offenses; (7) any statements the defendant wishes to make in the defendant's behalf about sentencing; and (8) the potential for rehabilitation or treatment. T.C.A. §§ 40-35-210(a), (b), -103(5); *State v. Williams*, 920 S.W.2d 247, 258 (Tenn. Crim. App. 1995). The trial court is still required to place on the record its reasons for imposing the specific sentence, including the identification of the mitigating and enhancement factors found, the specific facts supporting each enhancement factor found, and the method by which the mitigating and enhancement factors have been evaluated and balanced in determining the sentence. *See Bise*, 380 S.W.3d at 706 n.41; *State v. Samuels*, 44 S.W.3d 489, 492 (Tenn. 2001). Thus, under *Bise*, a "sentence should be upheld so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Bise*, 380 S.W.3d at 710.

In this case, the trial court considered the fact that Appellant, with a prior disorderly conduct conviction, had a previous history of criminal convictions or behavior in addition to that necessary to establish his range. *See* T.C.A. § 40-35-114(1). Appellant contends that this is error but concedes that he has a prior criminal history, and this fact is confirmed by the record on appeal. The trial court noted the "hauntingly similar" nature of the prior conviction during sentencing.

Appellant also challenges the trial court's enhancement of his sentence for aggravated assault with enhancement factor (10) because the risk to human life is an element of the offense. *See* T.C.A. § 40-35-114(10). The trial court made extensive findings of fact at the sentencing hearing, noting that Appellant "decided on his own to take matters into his hands, he brandished the firearm and then pursued this action, and because of that, I find there is evidence to support that particular enhancement factor." While we acknowledge that the risk to human life was high in this situation, we cannot ignore the fact that this enhancement factor is inherent in the offense of aggravated assault. Enhancement factor (10) is generally inapplicable to an aggravated assault conviction because "there is necessarily a risk to human life and the great potential for bodily injury whenever a deadly weapon is used." *State v. Nix*, 922 S.W.2d 894, 903 (Tenn. Crim. App. 1995). The supreme court has determined that:

> [A] trial court's misapplication of an enhancement or mitigating factor does not invalidate the sentence imposed unless the trial court wholly departed from the 1989 Act, as amended in 2005. So long as there are other reasons consistent with the purposes and principles of sentencing, as provided by statute, a sentence imposed by the trial court within the appropriate range should be upheld.

*Bise*, 380 S.W.3d at 706. Thus, despite the improper application of enhancement factor (10), we determine that the trial court appropriately sentenced Appellant and enhanced his sentence within the range based on his prior criminal record. The trial court followed the principles of sentencing and Appellant's sentence is within the sentencing range. The trial court did not abuse its discretion. Appellant is not entitled to relief on this issue.

### B. Alternative Sentencing

Appellant also argues that the trial court erred in denying his request for alternative sentencing. The abuse of discretion standard of review is also applicable to "questions related to probation or any other alternative sentence." *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012). Thus, a trial court's denial of an alternative sentence is presumptively reasonable so long as the sentence "reflect[s] a decision based upon the purposes and principles of sentencing." *Id.* The party appealing the sentence has the burden of demonstrating its impropriety. T.C.A. § 40-35-401, Sent'g Comm'n Cmts.; *see also State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991).

As a result of the 2005 sentencing amendments, a defendant is no longer presumed to be a favorable candidate for alternative sentencing. *State v. Carter*, 254 S.W.3d 335, 347 (Tenn. 2008) (citing T.C.A. § 40-35-102(6)). While a presumption no longer exists, an especially mitigated or standard offender convicted of a Class C, D, or E felony is still

considered a "favorable candidate" for alternative sentencing in the absence of evidence to the contrary. *Id.* A defendant is eligible for an alternative sentence if his sentence is ten years or less. T.C.A. § 40-35-303.

In determining a defendant's suitability for a non-incarcerative sentencing alternative, the trial court should consider whether:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant . . . .

T.C.A. § 40-35-103(1)(A)-(C).

In choosing among possible sentencing alternatives, the trial court should also consider Tennessee Code Annotated section 40-35-103(5), which states, in pertinent part, "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant should be considered in determining the sentence alternative or length of a term to be imposed." T.C.A. § 40-35-103(5); *State v. Dowdy*, 894 S.W.2d 301, 305 (Tenn. Crim. App. 1994).

With regard to alternative sentencing, the trial court noted in its order that Appellant had multiple opportunities to abandon the scene, to "call upon [Appellant's] years of wisdom and his knowledge of life and stop something before it got out of hand." Because of Appellant's past behavior and conviction, the trial court found the chance of rehabilitation "remote" and that there was "very little showing" Appellant was a favorable candidate for alternative sentencing due in part to his "unwillingness to control himself." In fact, the trial court considered Appellant a dangerous offender for the purposes of alternative sentencing. Additionally, the trial court noted the "subtle intimidation" by Appellant of the juveniles that had occurred since the event, as testified to by the fathers of the victims.

Even though Appellant expressed remorse for his involvement in the incident at the sentencing hearing, he also claimed that he lacked intent to harm the victim. However, the proof showed that Appellant made attempts to contact and intimidate the victims after the incident. In other words, Appellant lacked candor and refused to fully accept his responsibility for the incident. Both of these are reasons to deny an alternative sentence. *See*

*State v. Nunley*, 22 S.W.3d 282, 289 (Tenn. Crim. App. 1999); *State v. Joseph W. Denton*, No. M2009-02546-CCA-R3-CD, 2010 WL 4969264, at *5 (Tenn. Crim. App., at Nashville, Oct. 19, 2010), *perm. app. denied*, (Tenn. Mar. 10, 2011). We determine there is ample evidence to support the trial court's denial of an alternative sentence. We conclude that there was no abuse of discretion.

*Conclusion*

For the foregoing reasons, the judgments of the trial court are affirmed.


_____
JERRY L. SMITH, JUDGE